John W. Kluksdal [ISB No. 5641]
HEPWORTH HOLZER, LLP
537 W. Bannock Street, Ste. 200
P.O. Box 2582
Boise, Idaho 83701-2582
Telephone: (208) 343-7510
Fax No. (208) 342-2927
jkluksdal@hepworthholzer.com


Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD ERKEL, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. _____ |
| Plaintiff, ) ) | |
| v. ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| U.S. GEOTHERMAL INC., DOUGLAS J. GLASPEY, ALI G. HEDAYAT, RANDOLPH J. HILL, PAUL A. LARKIN, LELAND L. MINK, JAMES C. PAPPAS, JOHN H. WALKER, ORMAT NEVADA INC., OGP HOLDING CORP, and ORMAT TECHNOLOGIES, INC., ) ) ) ) ) ) ) ) | |
| Defendants. ) ) ) | **JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Edward Erkel ("Plaintiff"), individually and on behalf of all others similarly

situated, alleges the following upon information and belief, including investigation of counsel and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 1**

review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of U.S. Geothermal Inc. ("USGT" or the "Company") against USGT's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Ormat Technologies, Inc. through a wholly-owned subsidiary Ormat Nevada Inc. and its wholly-owned subsidiary OGP Holding Corp. (collectively "Ormat").

2.    Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on March 2, 2018. The Proxy recommends that USGT shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby USGT is acquired by Ormat. The Proposed Transaction was first disclosed on January 24, 2018 when USGT and Ormat announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Ormat will acquire all of the outstanding shares of common stock of USGT for $5.45 per share (the "Merger Consideration"). The deal is valued at approximately $109 million and is expected to close in the second quarter of 2018.

3.    The Proposed Transaction undervalues USGT. Numerous offers to acquire the Company were higher than the Merger Consideration, and the special committee formed to consider strategic alternatives determined that the Company's value was $5.85 per share. Yet it

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 2**

recommended to the Board and the Board agreed to sell the Company for $5.45 per share.

4.      The process that led to the Proposed Transaction appears sloppy and is confusing. There is no information on the authority of persons on the special committee, and offers that were ignored by the special committee for months. And the day the Board agreed to the Proposed Transaction the special committee learned that the entire structure of the Proposed Transaction was not what they expected. Yet it still recommended that the Board sign the Merger Agreement.

5.      Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by USGT management, as well as the financial analyses conducted by ROTH Capital Partners, LLC ("ROTH"), USGT's financial advisor.

6.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to USGT's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to USGT's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of USGT.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 3**

8.      Defendant USGT is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 390 E. Parkcenter Blvd, Ste 250, Boise, Idaho 83706. USGT common stock trades on NYSE under the ticker symbol "HTM." USGT constructs, operates and manages power plants that use geothermal resources to produce electricity.

9.      Defendant Douglas J. Glaspey has been Interim CEO since July 19, 2017, President of the Company since 2011, Chief Operating Officer since 2003 and a director of the Company since 2000. Glaspey is a co-founder of USGT.

10.     Defendant Ali G. Hedayat has been a director of the Company since February 1, 2017.

11.     Defendant Randolph J. Hill has been a director of the Company since September 30, 2016.

12.     Defendant Paul A. Larkin has been a director of the Company since 2000.

13.     Defendant Leland L. Mink has been a director of the Company since 2006.

14.     Defendant James C. Pappas has been a director of the Company since September 30, 2016.

15.     Defendant John H. Walker has been Chairman of the Board of Directors and a director of the Company since 2003.

16.     Defendants Glaspey, Hedayat, Hill, Larkin, Mink, Pappas and Walker are collectively referred to herein as the "Board."

17.     Defendant Ormat Technologies, Inc. is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 6225 Neil Road, Reno, Nevada 89511.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 4**

18.     Defendant Ormat Nevada Inc. is a Delaware corporation and a wholly owned subsidiary of Ormat Technologies, Inc.

19.     Defendant OGP Holding Corp. is a Delaware corporation and is a wholly owned subsidiary of Ormat Nevada Inc.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) USGT maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of USGT common stock and their successors in interest and/or their transferees, except

Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

24.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of December 31, 2017, USGT had approximately 19.4 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 6**

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

FURTHER SUBSTANTIVE ALLEGATIONS

**A.  After Confusing Process, USGT Agreed to Proposed Transaction that Undervalues Company**

25.     USGT produces electricity from geothermal sources, mainly in the western United States. The Company owns and operates geothermal power plants in Idaho, Nevada and Oregon, and has property interests in Guatemala, California, Oregon and Nevada.

26.     Geothermal energy can be harnessed in three ways. Dry steam, the most common method to produce geothermal energy, involves steam from underground going directly to a turbine that generates electricity. Flash power plants separate steam from water with high pressure,

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 7**

and the steam is delivered to a turbine that generates electricity. Binary power plants use heated water to heat a second liquid, which boils at a lower temperature than water, and the vapor from that liquid turns turbines that generate electricity.

27.     Currently less than one percent of electricity is produced by geothermal energy[1]. But a 2008 report published by a geothermal expert at the U.S. Geological Survey found a potential 3,675 to 16,457 megawatts of power from already identified geothermal resources in the western United States. Another 7,917 to 73,286 megawatts of power are possible from undiscovered resources.[2] Those estimates were based on resources that could use conventional methods to extract energy. The report discussed enhanced methods to extract energy from areas that lack the ability to circulate hot water or steam, and found that such areas could yield between 345,100 megawatts and 727,900 megawatts of energy using enhanced methods. In 2017, the United States consumed approximately 1.5 million megawatts of energy,[3] making geothermal energy a significant potential energy source.

28.     Enhanced methods to extract geothermal energy are not yet possible. However, USGT's operations and future projects are poised to capture a significant portion of the market. As of the end of 2017, power plants currently operated by USGT produced 41.4 megawatts. Another six projects under development were targeted to produce at least 119 megawatts, while nine projects under exploration were targeted to produce another 163 megawatts, for a total of 323 megawatts. This is between 2% and 10% of the recognized potential power from discovered geothermal resources.

29.     In 2015, Ormat approached USGT with an expression of interest. That initiated an

---

[1] https://www.eia.gov/energyexplained/index.cfm?page=electricity_in_the_united_states
[2] https://pubs.usgs.gov/fs/2008/3082/pdf/fs2008-3082.pdf
[3] https://www.eia.gov/totalenergy/data/monthly/pdf/sec7_3.pdf

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 8**

eight month-long process to review strategic alternatives. At the end of the process, in March 2016, the Board determined that shareholder value would be maximized by continuing on a stand-alone basis.

30.     Three months after ending the process to review strategic alternatives, Party A approached USGT about a potential investment. After conducting due diligence, in late November 2016, Party A offered to purchase the Company for $5.30 to $5.93 per share. In light of this offer, the Board decided to conduct another process to "reevaluate potential transactions" on December 1, 2016. Proxy at 19. For the next 13 months, a special committee consisting of Defendants Larkin, Papas, Hill and Hedayat (who joined the special committee in February 2017) conducted a haphazard, confusing process that led to the signing of the Merger Agreement by USGT and Ormat on January 24, 2018.

31.     The Proposed Transaction does not properly value the Company and is the product of a deeply flawed process. Almost every proposal received by the Company was higher than the Merger Consideration: Party A offered $5.30 to $5.93 per share in November 2016; Party C offered $6.50 per share on January 13, 2017; Party D made an offer of approximately $5.66 per share on March 16, 2017; Parties D and E made a combined offer of $6.00 per share on June 20, 2017, which was increased to $6.25 per share on June 22, 2017; Party G offered $6.75 per share on July 5, 2017; and Party D then submitted another offer of $5.60 per share on October 20, 2017. Yet the Board agreed to accept $5.45 per share from Ormat.

32.     The Merger Consideration is significantly less than the value of the Company as calculated by the special committee in September 2017. According to the Proxy, Defendant Hedayat reviewed USGT's operations and cash flows, assuming that the company remained a stand-alone company, no development projects were developed, and other assumptions. That

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 9**

review found a potential value of $5.85 per share for USGT's outstanding shares. Ormat stated in December 2017 that it would be lowering its offer from $5.80 per share because USGT's recent closing stock price would mean Ormat paying a significant premium, as well as concerns with working capital items and operational issues. The special committee had already decided that it would "lower the value" it placed on the Company's development assets and expansion projects based on these issues. Proxy at 26. But the value for USGT calculated by the special committee had assumed that there would be no development projects. The Merger Consideration thus undervalues the Company.

33.     The process leading to the Proposed Transaction was conducted in a haphazard, confusing manner. The special committee to consider a strategic alternative was initially created after the Board decided that "it would be in the best interests of [USGT] and its stockholders to reevaluate potential transactions." Proxy at 19. But the Proxy doesn't indicate whether Party A, Party B, Party C, Party D, Party E, Party F or Party G were involved in the process that ended in March 2016. The Proxy is also silent as to whether the special committee reached out to parties that were involved in the previous process.

34.     There are numerous instances of the Proxy's lack of clarity concerning the sales process. Different members of the special committee are described as speaking to various parties, with those parties sometimes named and other times not, but there's no mention of why or on what authority those directors had the conversations. The Proxy does not indicate whether the special committee determined a list of potential parties to be contacted, or if all of the parties discussed in the Proxy approached the Board without solicitation. And the special committee failed to discuss Party A or Party F in June and July 2017 before entering into an exclusivity agreement with Party G, but then decided to contact Party F in August 2017 after Party G withdrew from the process.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 10**

And Party A was not discussed again until October 2017, when the special committee was negotiating an exclusivity agreement with Ormat. Even though a year had passed, and the special committee had no information about any changes in Party A's situation, the special committee opted to dismiss the offer without even calling Party A.

35.     Finally, despite two months of negotiations with Ormat, with numerous drafts of the Merger Agreement shared with the special committee during that time, it was not until January 23, 2018 that the special committee learned that USGT's parent company would be Ormat Nevada Inc. The day before the Merger Agreement was signed, the special committee received financial information about Ormat Nevada Inc. And that was apparently sufficient time to determine that Ormat Nevada Inc. was a good fit for USGT. The entire structure of the transaction changed and that same day the special committee recommended that the Board enter into the Proposed Transaction.

36.     While the Board has a duty to maximize shareholder value, it instead opted to sell the Company for less than the special committee's calculated value for USGT. And the Proxy raises questions about the adequacy of the sales process.

**B.   USGT's Officers Stand to Receive Benefits Unavailable to the Class**

37.     The Proxy acknowledges that the Company's executive officers and directors have interests in the merger that may differ from those of the stockholders and may create conflicts of interest. Stock options that have been awarded to and are held by USGT's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to the shares already held, will create a windfall for USGT's executive officers and directors that is unavailable to the common stockholders. In total, as demonstrated in the following chart, the executive officers and Board

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 11**

members will obtain more than $19.2 million:

| | Total Options Consideration | Total Share Consideration |
|---|---|---|
| *Named Executive Officers* | | |
| Douglas J. Glaspey | $380,202 | $717,296 |
| Kerry D. Hawkley | $238,920 | $192,543 |
| Jonathan Zurkoff | $227,337 | $160,797 |
| *Directors* | | |
| Ali Hedayat | $17,166 | $708,500 |
| Randolph J. Hill | $29,793 | – |
| Paul A. Larkin | $147,356 | $367,711 |
| Leland L. Mink | $134,024 | $134,773 |
| James C. Pappas | $29,793 | $15,559,467 |
| John H. Walker | $147,356 | $94,149 |

## C.  The Preclusive Deal Protection Devices

38.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

39.     By way of example, section 5.04(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.04(a) further demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

40.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Ormat. For example, pursuant to section 5.04(c) of the Merger Agreement, the Company must notify Ormat of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, sections 5.04(d) and (e) require that the Board grant Ormat at least five (5) business days to negotiate the terms of the Merger Agreement to render the superior

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 12**

proposal no longer superior. Ormat is able to match the unsolicited offer because, pursuant to sections 5.04(c) and (d) of the Merger Agreement, the Company must provide Ormat with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

41.     In other words, the Merger Agreement gives Ormat access to any rival bidder's information and allows Ormat a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for USGT, because the Merger Agreement unfairly assures that any "auction" will favor Ormat and allow Ormat to piggy-back upon the due diligence of the foreclosed second bidder.

42.     In addition, pursuant to sections 7.04(a) and 7.06(a) of the Merger Agreement, USGT must pay Ormat a termination fee equal to 3% of the Merger Consideration in cash if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

43.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Ormat's inadequate offer price.

### D.  The Materially Incomplete and Misleading Proxy

44.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to USGT stockholders so that

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 13**

they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

45.    On March 2, 2018, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, USGT shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

> ***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

46.    The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of ROTH's fairness opinion, ROTH reviewed "certain information, including financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company that was furnished to ROTH by management of the Company." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that USGT's management provided to the Board and ROTH.

47.    Notably, Defendants failed to disclose the financial projections for fiscal years 2018 through 20147 for: (a) EBITDA; (b) EBIT; (c) depreciation and amortization; (d) taxes; (e) capital expenditures (CapX); (f) change working capital; (g) flows (into)/from project reserves; (h) development projects; (i) O&M fees; (j) corporate support; and (k) stock-based compensation expense. This omitted information is necessary for USGT stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

> ***Materially Incomplete and Misleading Disclosures Concerning ROTH's Financial Analyses***

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 14**

48.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the specific amounts of cash & cash equivalents and debt utilized by ROTH in the analysis. The Proxy also fails to disclose the individual inputs and assumptions utilized by ROTH to derive the discount rate range of 8.0% to 10.0% for USGT's operating and expansion projects and the discount rate rage of 14.0% to 16.0% for USGT's development projects. In addition, the Proxy fails to disclose how ROTH treated stock-based compensation expense (i.e. as a cash or non-cash expense). Finally, the Proxy fails to disclose how, if at all, ROTH incorporated the value of USGT's NOLs in the analysis.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

49.     The Proxy also fails to disclose material information concerning the sales process.

50.     For example, the Proxy fails to state whether the confidentiality agreements USGT entered into with two parties (other than Ormat) are still in effect and/or contain DADW standstill provisions that are presently precluding those parties from making a topping bid for the Company. In fact, the Proxy fails to state whether the Company entered into confidentiality agreements with parties other than Party A and Party C.

51.     The disclosure of the terms of any standstill provisions is crucial to USGT stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information is especially important where, as here, the Proxy is silent as to whether any confidentiality agreements contained a standstill agreement and whether any standstill agreements have been waived.

52.     In addition, section 5.04(a) of the Merger Agreement prohibits the Board from waiving any previously executed standstill agreement unless it would be inconsistent with the

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 15**

Board's fiduciary duties. Whether the Board agreed to that provision knowing that agreements with Party A, Party C, or any other party, contained such a standstill agreement, must be disclosed to USGT stockholders before they decide on voting for or against the Proposed Transaction.

53.     The Proxy also fails to disclose key information concerning the parties involved in the sales process. For example, the Proxy fails to disclose whether the four public and private geothermal companies and one private equity fund contacted by the USGT CEO in November and December 2016 participated in the sales process, whether they were part of the process undertaken in 2015 to 2016, and whether any of those parties entered into nondisclosure agreements with the Company.

54.     The Proxy similarly fails to disclose how many parties in total were in contact with the Company, the Board or the special committee concerning a strategic transaction, how many parties in total were engaged in the process, how many companies were strategic parties and how many were financial parties, whether any of the parties involved in the process had been involved in the process undertaken in 2015 to 2016, and whether any of the parties (besides Party A, Party C and Ormat) entered into nondisclosure agreements with the Company.

55.     The Proxy fails to disclose information concerning the special committee formed to consider a strategic transaction. There is no information about the authority given to the special committee by the Board, the authority provided to members of the special committee to hold discussions with interested parties, or whether the special committee determined parties to be contacted. While the Proxy mentions "the process" discussed by the special committee at meetings on December 15, 2016, January 16, 2017, and January 27, 2017 the Proxy does not provide information about the nature of the process determined by the special committee.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 16**

56.     The Proxy fails to disclose information about the timing and nature of any employment discussions. At a meeting on February 15, 2017, counsel for the Company "noted the importance of independent director oversight, particularly for transactions in which members of the company's management may be employed by the acquirer." Proxy at 21. But the Proxy does not mention whether any discussions occurred with parties concerning employment of USGT management.

57.     The Proxy also fails to disclose the analysis and terms of an acquisition as presented by Ormat to members of the special committee on June 1, 2017. The Proxy similarly fails to disclose the details of Party D/E's June 14, 2017 joint proposal to acquire assets of USGT and the special committee's analysis of the ultimate benefit to stockholders from the proposal and the analysis of where Party D/E's proposal landed in the range of offers.

58.     The Company entered into exclusivity agreements with Party G, Party D/E and Ormat, but the Proxy does not disclose whether exclusivity was a condition of the offers made the named parties and the basis for the special committee's agreement to exclusivity.

59.     The Proxy states that Defendant Hedayat "reviewed operations and cash flows for [USGT] assuming it remained a stand-alone company, the development projects remained undeveloped . . . as well as a number of other assumptions regarding costs and anticipated cash flow[]" and determined that USGT's outstanding shares at the end of 2018 would have a potential value of $585 per share. Proxy at 24. Yet the Proxy does not disclose the information underlying Defendant Hedayat's assumptions and the valuation analysis in general.

60.     The Proxy fails to disclose the terms of a proposed form of a proposal letter sent on October 13, 2017 by Defendant Hedayat to Ormat.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 17**

61.     The Proxy notes that on December 18, 2017, "Mr. Truelock of ROTH provided an update on the fairness opinion review and the impact of the expansion projects on the fairness review." Proxy at 27. The Proxy does not disclose how the expansion projects impacted the fairness opinion, why the expansion projects apparently altered the fairness opinion, and the nature of any previous discussions of the fairness opinion with the special committee.

62.     The Proxy does not disclose the internal cash projections and 2018 budget as updated by USGT in mid-January 2018, whether those updated projections were provided to ROTH and relied on by ROTH for its fairness opinion, and how the updated projections differed from previous projections provided to the special committee and/or ROTH.

63.     Finally, the Proxy fails to disclose the reason the special committee did not know that USGT's parent company under the Proposed Transaction would be Ormat Nevada Inc. until January 23, 2018. The Proxy also fails to disclose whether the special committee discussed how this structure altered its understanding of the transaction, whether the special committee discussed this change with the Board and whether the special committee asked ROTH to analyze the Proposed Transaction with Ormat Nevada Inc.'s financial information.

64.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, USGT stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

65.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the

materially incomplete and misleading information discussed above.

66.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

67.     Further, the Proxy indicates that on January 23, 2018, ROTH reviewed with the Board its financial analysis of the Merger Consideration delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to USGT shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning ROTH's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

68.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 19**

70.     Defendants have filed the Proxy with the SEC with the intention of soliciting USGT shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

71.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of USGT, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

72.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

73.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of USGT shares and the financial analyses performed by ROTH in support of its fairness opinion; and (iii) the sales process.

74.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that ROTH reviewed and discussed

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 20**

its financial analyses with the Board on January 23, 2018, and further states that the Board relied upon ROTH's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

75.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

76.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of USGT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of USGT and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 21**

misleading.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

80.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 22**

result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and her counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to USGT shareholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 23**

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated this 16th day of March, 2018

**HEPWORTH HOLZER, LLP**


_/s/ John W. Kluksdal_____
John W. Kluksdal

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 - 24**